UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LESLIE MOUDIS,

                    Plaintiff,

     -against-

UNITED STATES OF AMERICA,

                    Defendant.
------------------------------------------------------------------------X

For Online Publication Only

**FINDINGS OF FACT &
CONCLUSIONS OF LAW**
20-CV-05674 (JMA) (AYS)

**AZRACK, United States District Judge:**

      Plaintiff Leslie Moudis brought this Federal Tort Claims Act case against Defendant United States of America asserting that, in March 2019, a United States Postal Service ("USPS") employee negligently drove a USPS truck into Plaintiff's vehicle at an intersection in Roslyn, New York. (See generally, Compl., ECF No. 1.) After the parties completed discovery and unsuccessfully mediated this case, the Court scheduled a bench trial for January 16, 2024. (See July 17, 2023, Order; Dec. 8, 2023, Joint Status Report, ECF No. 34; Minute Entry for Dec. 18, 2023, Conference, ECF No. 35.)

      Two weeks before trial, Plaintiff filed letters seeking to adjourn the trial and substitute a new expert for her treating physician because that physician became indefinitely unavailable due to an unspecified medical situation. (See ECF Nos. 37, 38.) After requiring status reports with more details underlying Plaintiff's requests and holding two conferences, the Court bifurcated the bench trial such that it would first adjudicate only liability; if necessary, further proceedings would address damages. (See Jan. 3, 2024, Status Report Order; Jan. 5, 2024, Status Report, ECF No. 39; Minute Entry for Jan. 9, 2024, Conference, ECF No. 43; Jan. 11, 2024, Status Report, ECF No. 41; Minute Entry for Jan. 12, 2024, Conference, ECF No. 44.)

      The Court held the liability bench trial on January 16, 2024. (See Minute Order for Jan. 16, 2024, Bench Trial, ECF No. 48.) Now, based on the Court's evaluation of the trial testimony—

including the credibility of the witnesses—and the other evidence introduced at trial, the Court issues the below findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).

## I.    FINDINGS OF FACT

At approximately 10:00 AM on March 27, 2019, Plaintiff (who was then forty-nine years old) drove her 2017 Range Rover from her Port Washington, New York home toward a Jericho, New York Home Depot. (Trial Transcript ("Tr.") 9, 18-22.[1]) Approximately thirteen minutes into the trip, Plaintiff drove south on West Shore Road toward where the east-west portion of Old Northern Boulevard intersects with and merges into West Shore Road (the "Intersection"). (Tr. 21.) The Intersection is mapped as follows:



---

[1] The trial transcript is available on the docket as Exhibit 1 to Plaintiff's Findings of Fact and Conclusions of Law at ECF No. 52.

(Def.'s Ex. D-2, ECF No. 50-2 at 2; see also Tr. 23 (explaining that the Intersection is "[l]ike a T" rotated ninety degrees clockwise).)

Plaintiff drove in the south-bound left lane of West Shore Road (i.e., the east-most lane on the west side of West Shore Road) at the speed limit. (Tr. 22-30); see also Tr. 25-26, 58-59, 62-63 (Plaintiff's testimony that the speed limit on West Shore Road decreased from forty-five miles per hour to twenty-five miles per hour as she approached the Intersection). It was a "clear, nice sunny day." (Tr. 28.) Plaintiff had not consumed alcohol or medication in the prior twenty-four hours. (Tr. 23-24.) Plaintiff was neither eating nor using her cell phone, her car's navigation system, or any other electronics. (Tr. 24-25.) Plaintiff was familiar with the route she took from her home toward Home Depot. (Tr. 22.) Plaintiff did not need to arrive at Home Depot at a particular time. (Tr. 21.) Plaintiff was in "no rush" to get to her intended destination. (Tr. 28.)

The traffic lights in the Intersection (1) continuously displayed a green light to Plaintiff as she approached with the south-bound traffic, and (2) simultaneously displayed a green light to the north-bound traffic.[2] (Tr. 27, 69-71.) When she was "3 or 2 cars away" from the Intersection, Plaintiff first observed a USPS truck in the north-bound right lane of West Shore Road (i.e., the east-most lane on the east side of West Shore Road). (Tr. 26; see Tr. 69, 81-82 (Plaintiff's testimony that she was "near" Mott Avenue but more so "at the intersection of the light" when she saw the USPS truck); see also Def.'s Ex. D-2, ECF No. 50-2 at 2 (showing that Mott Avenue is the cross-street with West Shore Road just north of the Intersection).) Robert T. West ("West") was driving that truck during his USPS employment. (Tr. 99-100.)

---

[2]  The Court uses the terms "traffic light" and "green light" to refer, respectively, to the "traffic-control signal" and "steady circular green signal" described in New York Vehicle and Traffic Law section 1111.

West then drove the truck "fast" across the northbound middle lane, into the northbound left lane, and, without slowing down, began to turn left toward Old Northern Boulevard. (Tr. 23, 27-30, 32-33, 80-82, 94-95.) West crossed those two lanes of traffic and began his turn without using the USPS truck's turn signals. (Tr. 27, 32.) At the same time, the left-pointing arrow signal in the Intersection's traffic light that faced West was not illuminated. (Tr. 100-01.) Thus, the Intersection traffic light that faced West appeared like this:



(Pl.'s Ex. 3 at 00:24 (post-accident video footage replicating West's path and point of view); see also id. at 00:20-00:23 (depicting how the same traffic light appears when its left-pointing green or yellow arrows illuminate alongside its green light).[3]) Plaintiff noticed West's abrupt movement

---

[3] Plaintiff's Exhibit 3 is not on ECF but is on file with the Court.

4

into the northbound left lane and believed West would stop there—without turning—because Plaintiff had a green light and was already in the Intersection. (Tr. 83, 85-87; <u>see also</u> Tr. 79-80, 94-98.) West, however, did not see Plaintiff's vehicle and proceeded into the Intersection; the vehicles collided (the "Accident"). (Tr. 32-35, 99-100.) The front left corner of the USPS truck struck the front left corner of Plaintiff's vehicle. (Tr. 33.) The airbags in Plaintiff's vehicle did not deploy. (Tr. 34.) This post-Accident photograph depicts the damage to the vehicles:



(Pl.'s Ex. 1, ECF No. 50-1 at 6.)

## II. LEGAL STANDARDS

### A. Federal Tort Claims Act

This case arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-80 (the "FTCA"), which makes the United States liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." § 1346(b); see Dooley v. United States, 83 F.4th 156, 162 (2d Cir. 2023) (explaining that the FTCA "waives the sovereign immunity of the United States for certain classes of torts claims"). The FTCA applies to this case because West was an employee of the United States acting within the scope of his employment at the time of the Accident. (Tr. 99-100.)

"[I]n an FTCA action, 'courts are bound to apply the law of the state where the tort occurred'— in this case, New York." Borley v. United States, 22 F.4th 75, 78 (2d Cir. 2021) (quoting Makarova v. United States, 201 F.3d 110, 114 (2d Cir. 2000)) (internal alterations omitted). "Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" Id. (quoting Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333 (1981)). "[E]vidence of negligence is not enough by itself to establish liability, for it must also be proved that the negligence was a proximate, or legal, cause of the event that produced the harm sustained by the plaintiff." Dooley, 83 F.4th at 164 (quoting Hain v. Jamison, 28 N.Y.3d 524, 528 (2016)). "[N]egligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." Id. at 162 (quoting Mazella v. Beals, 27 N.Y.3d 694, 706 (2016)). "By contrast, 'proximate cause will be found lacking where the act merely

6

furnished the occasion for but did not cause' the injury." Id. at 164 (quoting Hain, 28 N.Y.3d at 530) (ellipsis omitted).

## B. Standard Of Proof And Credibility Assessments

Plaintiff bears the burden to prove her claims by a preponderance of the evidence. See Velasquez v. United States Postal Serv., 155 F. Supp. 3d 218, 227 (E.D.N.Y. 2016). The burden of showing a preponderance of the evidence "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 137 n.9 (1997) (quoting Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal., 508 U.S. 602, 622 (1993)). Under that standard, "the party with the burden of proof would lose in the event that the evidence is evenly balanced." Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 731 (2d Cir. 2001); see United States v. Gigante, 94 F.3d 53, 55 (2d Cir. 1996) ("The preponderance standard is no more than a tie-breaker dictating that when the evidence on an issue is evenly balanced, the party with the burden of proof loses.").

After a bench trial, it "is within the province of the district court as the trier of fact to decide whose testimony should be credited. And as trier of fact, the judge is entitled, just as a jury would be, to believe some parts and disbelieve other parts of the testimony of any given witness." Diesel Props S.r.l. v. Greystone Business Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011) (internal quotation marks and citations omitted). Similarly, following a bench trial "the weight to be given to particular pieces of evidence" is "peculiarly within the province of the [judge as] trier of fact" and these determinations are "entitled to considerable deference." Cont'l Ins. Co. v. Lone Eagle Shipping (Liber.), 134 F.3d 103, 104 (2d Cir. 1998).

7

### III. CONCLUSIONS OF LAW

#### A. <u>Credibility of Witnesses</u>

Plaintiff called the only two witnesses that testified: Plaintiff and West. Plaintiff testified on direct examination, cross examination, and re-direct examination in detail about the Accident. (<u>See</u> Tr. 8-98.) West briefly testified on direct examination only and, in sum, simply confirmed that he was a USPS employee acting within the scope of that employment at the time of the Accident, he did not see a green left-pointing arrow in the Intersection's traffic signal before he turned, and he did not see Plaintiff's vehicle before the Accident. (Tr. 99-102.) The Court found both witnesses credible and their testimony compatible. While West testified that he did not see Plaintiff's vehicle before the Accident, he did not dispute Plaintiff's testimony. West did not, for example, assert that he entered the Intersection first, contend that he entered the Intersection safely, or otherwise justify his driving or criticize Plaintiff's driving.

#### B. <u>Weight of the Evidence</u>

Based on the Court's evaluation of the witnesses' credibility, their testimony, and the other evidence admitted at trial, the Court concludes for the reasons set forth below that Plaintiff proved by a preponderance of the evidence that West's negligence was the sole proximate cause of the Accident and that Defendant is liable for any resulting damages (which the parties will address when the bench trial resumes).

##### 1. **West Breached Several Duties that he Owed to Plaintiff**

To determine the existence and scope of West's duty to Plaintiff, the court considers "whether the relationship of the parties is such as to give rise to a duty of care, whether the plaintiff was within the zone of foreseeable harm[,] and whether the accident was within the reasonably foreseeable risks." <u>Dooley</u>, 83 F.4th at 162 (quoting <u>Di Ponzio v. Riordan</u>, 89 N.Y.2d 578, 583

(1997)) (ellipses omitted). "In New York, the Vehicle and Traffic Law ('VTL') defines the duties of motorists, and 'a violation of the VTL constitutes negligence as a matter of law.'" Id. at 163 (quoting Desio v. Cerebral Palsy Transp., Inc., 994 N.Y.S.2d 681, 682 (App. Div. 2d Dep't 2014)). The Accident implicates several provisions of the VTL. New York drivers must use care in approaching and turning left in an intersection as follows.

> At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

N.Y. VEH. & TRAF. LAW § 1160(b). Before commencing the turn described in section 1160(b), a driver must "continuously" provide a turn signal "during not less than the last one hundred feet traveled by the vehicle before turning." § 1163(a)-(b). Such a turn must not be made "until such movement can be made with reasonable safety." § 1163(a). Relatedly, a driver intending to turn "must yield the right of way to oncoming traffic before making a left turn across the oncoming traffic's lane." Velasquez, 155 F. Supp. 3d at 228 (first citing § 1111(a); then citing § 1141; and then citing N.Y.P.J.I. 2:79).

As explained above, at the time of the Accident, the Intersection traffic lights displayed green lights to Plaintiff and West, the traffic light that faced West did not illuminate a left-pointing arrow, and West turned, without signaling, into the Intersection as Plaintiff drove straight into it. Supra Part I. West therefore breached the duties he owed to nearby motorists, including Plaintiff, under VTL sections 1111(a)(1), 1141, 1160(b), and 1163(a)-(b). West's actions constitute negligence. See, e.g., Velasquez, 155 F. Supp. 3d at 228. That negligence plainly served as a proximate cause of the Accident, for which Defendant is responsible as West's employer. See,

9

e.g., id.; see also Peterson v. Garnsey, __N.Y.S.3d__, No. CV–23–0459, 2024 WL 2193967, at *2 (App. Div. 3rd Dep't May 16, 2024) (affirming that the defendant negligently caused an accident based on his "admission that he failed to see the nonparty vehicle approaching . . . prior to attempting his turn"); Seizeme v. Levy, 174 N.Y.S.3d 421, 423 (App. Div. 2nd Dep't 2022) (holding that the defendant negligently caused an accident when he "made a left turn directly into the path of the plaintiff's vehicle without yielding the right-of-way to the plaintiff, in violation of [VTL section] 1141, and when it was not reasonably safe to make a left turn, in violation of [VTL section] 1163(a)").

### 2.     Plaintiff did not Breach Duties that she Owed to West

The above determination that West negligently caused the Accident "does not settle the dispute as 'there may be more than one proximate cause of'" a collision. Dooley, 83 F.4th at 163 (quoting Mazella, 27 N.Y.3d at 706). To be sure, New York uses a comparative negligence framework in which "liability is split between plaintiffs and defendants based on the relative culpability and causal significance of their conduct." Id. (quoting Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc., 113 F.3d 296, 300 (2d Cir. 1997)); see N.Y. C.P.L.R. § 1411. To reduce its liability for negligence, "the defendant bears the burden of showing not only that the plaintiff was negligent, but that such negligence was a cause of the accident." Dooley, 83 F.4th at 164. Defendant's arguments to that end, however, fail to persuade that Plaintiff was negligent.

First, Defendant contends Plaintiff violated VTL section 1180 by continuing to drive forty-five miles per hour after the speed limit reduced to twenty-five miles per hour near the Intersection. (Def.'s Prop. Findings of Fact and Concls. of Law ("Def. Mem."), ECF No. 52 at 20-22); see VEH. & TRAF. LAW § 1180(d) (prohibiting driving over speed limits). The Court, however, credits Plaintiff's testimony that she drove at the speed limit even as it reduced to twenty-five miles per

10

hour. (Tr. 25-26, 59-61; see also Tr. 21, 28 (Plaintiff's testimony that she was in "no rush" and did not need to arrive at Home Depot at a particular time).) The minor damage to the vehicles bolsters this conclusion. (See Pl.'s Ex. 1, ECF No. 50-1); Martino v. Triangle Rubber Co., 671 N.Y.S.2d 524, 526 (App. Div. 2nd Dep't 1998) (explaining that "the amount of damage to a car may be used to infer the speed of the vehicle that caused the damage . . . ."); cf. Pei Ru Guo v. Efkarpidis, 127 N.Y.S.3d 545, 548 (App. Div. 2nd Dep't 2020) (affirming that defendant drove over the speed limit based on the extensive damage shown in post-collision photographs). The same is true of the fact that the airbags in Plaintiff's vehicle did not deploy. (Tr. 34); see Green v. State of N.Y., 897 N.Y.S.2d 536, 538 (App. Div. 3rd Dep't 2010) ("[C]laimant's airbag did not deploy upon impact, indicating that the accident likely occurred at a much lower speed."); cf. In re Fredsall, No. 710238/2019, 2022 N.Y. Misc. LEXIS 18275, at *6 (Sup. Ct. Apr. 12, 2022) (holding that the deployment of airbags constituted "evidence that [the defendant] was speeding at the time" of the collision). Defendant's arguments that Plaintiff did not initially recall the exact reduced speed limit and the exact location of where it went into effect do not compel a contrary conclusion. (See Def. Mem., ECF No. 52 at 20-21.)

Second, Defendant contends that West "was already in the Intersection, making the left turn, before Plaintiff had entered the Intersection." (Id. at 23.) Based on that assertion, Defendant argues that Plaintiff violated VTL section 1140 by not yielding to West and violated VTL section 1180 and New York common law by not using reasonable care to avoid the collision. (Id. at 22-24); see VEH. & TRAF. LAW § 1140(a) ("The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway."); id. § 1180(a) ("No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.");

11

Salahuddin v. United States, 564 F. Supp. 3d 75, 86 (E.D.N.Y. 2020) ("New York law imposes a duty upon drivers to operate their vehicles with reasonable care[,] taking into account the actual and potential dangers existing from weather, road, traffic and other conditions." (internal quotation marks and brackets omitted)).[4]  The Court, however, rejects the factual premise to these arguments. The Court credits Plaintiff's testimony that she was "already" in the Intersection when West drove into it and crashed into Plaintiff's vehicle.  (Tr. 87; see Tr. 33 ("[West] just came from one lane to the turning lane and just kept -- like, he just kept going. He never stopped.  And he hit the corner of my car.").)   Further, Defendant's assertion that West was rightly in the Intersection is inconsistent with the damage to the front left sides of the vehicles.  (See Pl.'s Ex. 1, ECF No. 50-1 at 6).  "[I]t is difficult to conceive of how" Plaintiff could have "only contacted the front [left] corner of" the USPS truck if West was properly in the Intersection before Plaintiff.  Salahuddin, 564 F. Supp. 3d at 81; see Castro v. Hatim, 106 N.Y.S.3d 24, 26 (App. Div. 1st Dep't 2019) (determining collision's circumstances based on post-collision photographs).

Third, Defendant contends that Plaintiff breached her common law duty of care by entering the Intersection despite seeing West quickly drive moments earlier into the left turning lane on the north-bound side of West Shore Road.  (See Def. Mem., ECF No. 52 at 21-24.)  The Court disagrees.  Plaintiff explained that she observed West speed into the turning lane, "like when someone [almost] misses an exit," and assumed that West would follow his obligation to yield to Plaintiff.  (Tr. 79-80, 83, 85-86.)  Plaintiff acted consistent with New York law, which has long recognized that "[t]he operator of a vehicle with the right-of-way is entitled to assume that others

---

[4]  The common law requires drivers to (1) "maintain a reasonably safe rate of speed," (2) "have the automobile or motorcycle under reasonable control," (3) "keep a proper lookout under the circumstances then existing to see and be aware of what was in their view," and (4) "use reasonable care under the circumstances to avoid an accident." Velasquez, 155 F. Supp. 3d at 227 (internal quotation marks and brackets omitted).

12

will obey the traffic laws requiring them to yield." Angelillo v. Guerin, 194 N.Y.S.3d 272, 274 (App. Div. 2nd Dep't 2023) (quoting Pei Ru Guo, 127 N.Y.S.3d at 547); see, e.g., Kirby v. Lett, 175 N.Y.S.3d 87, 89 (App. Div. 2nd Dep't 2022).  Thus, "[P]laintiff, who had the right-of-way, was entitled to anticipate that a vehicle turning left would obey the traffic laws requiring that vehicle to yield." Seizeme, 174 N.Y.S.3d at 423; see, e.g., Francois v. Baez-Mieses, 190 N.Y.S.3d 436, 437 (App. Div. 2nd Dep't 2023) ("A driver is not required to anticipate that a vehicle traveling in the opposite direction will cross over into oncoming traffic." (internal quotation marks omitted)); Kwang Jin Kim v. Ramos, 119 N.Y.S.3d 877, 878 (App. Div. 2nd Dep't 2020) (same).

The Court would conclude that Plaintiff was not negligent even if she knew or should have known that West would negligently enter her path.  "Although a driver with a right-of-way also has a duty to use reasonable care to avoid a collision, a driver with the right-of-way who has only seconds to react to a vehicle which has failed to yield is not comparatively negligent for failing to avoid the collision." Foley v. Santucci, 23 N.Y.S.3d 338, 339 (App. Div. 2nd Dep't 2016) (quoting Ducie v. Ippolito, 944 N.Y.S.2d 275, 276 (App. Div. 2nd Dep't 2012)) (ellipsis omitted); see Kirby, 175 N.Y.S.3d at 89.  As she had only seconds to react to West's sudden movement (see Tr. 80-81, 87), Plaintiff "did not have a sufficient opportunity to avoid the accident when [West] turned left directly into the path of the plaintiff's vehicle." Seizeme, 174 N.Y.S.3d at 423; see Angelillo, 194 N.Y.S.3d at 274; Kirby, 175 N.Y.S.3d at 89; Foley, 23 N.Y.S.3d at 339; accord Dooley, 83 F.4th at 165 (holding plaintiff was not negligent because he lacked sufficient time to avoid the collision).

## IV. CONCLUSION

For the reasons stated above, the Court concludes that West's negligence served as the sole proximate cause of the Accident and Defendant is liable for any resulting damages proven at the next portion of the bench trial. The parties shall file a joint letter by June 27, 2024, regarding their availability to resume the bench trial.

**SO ORDERED.**

Dated: June 20, 2024
       Central Islip, New York

                                            (/s/ JMA)
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE